# 17-1029

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆◆

MOHAMMAD O. FAROQUE, KHALED KHAN, MD IMRANUL HAQUE, KHANDKER
HAQUE, MOHAMMED S. ALAM, ASAD IKBAL, MOHAMMED E. KARIM,
on behalf of themselves and on behalf of all other similarly situated persons,

*Plaintiffs-Appellees,*

—against—

PARK WEST EXECUTIVE SERVICES, DBA TOWN CAR INTERNATIONAL,
TOWN CAR INTERNATIONAL HOLDINGS, LLC, ZACHARY BERMAN,
in his individual and professional capacities, JOHN M. AHERN,
in his individual and professional capacities,

*Defendants-Appellants.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR DEFENDANTS-APPELLANTS

ALLAN S. BLOOM
PROSKAUER ROSE LLP
11 Times Square
New York, New York 10036
(212) 969-3000

NICOLE A. EICHBERGER
PROSKAUER ROSE LLP
650 Poydras Street, Suite 1800
New Orleans, Louisiana 70130
(504) 310-4088

*Attorneys for Defendants-Appellants*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendants-Appellants Park West Executive Services d/b/a Town Car International ("TCI") and Town Car International Holdings, LLC (together, "Town Car") hereby identify the following parent corporations or publicly held corporations that own 10% or more of their stock:

TCI:  Town Car International Holdings, LLC.

Town Car International Holdings, LLC:  None.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

STATEMENT OF JURISDICTION .......................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................3

PRELIMINARY STATEMENT .............................................................4

STATEMENT OF THE CASE ...............................................................7

I.     FACTUAL BACKGROUND ...........................................................7

     A.    Town Car's Business and Relationship With IOOs ...........................7

     B.    Town Car's Business Relationship With Plaintiffs ...........................8

II.    PROCEDURAL HISTORY .......................................................10

STANDARD OF REVIEW .................................................................13

SUMMARY OF ARGUMENT ............................................................14

ARGUMENT ...............................................................................16

I.     THIS COURT SHOULD REVERSE THE DISTRICT COURT'S
     DENIAL OF THE MOTION TO COMPEL ARBITRATION. ..................16

     A.    The District Court Did Not Properly Apply the Second Circuit's
          Presumption of Arbitrability. .............................................16

     B.    The District Court's Inferred Time Limitation Does Not
          Constitute Positive Assurance to Overcome the Presumption of
          Arbitrability. ...............................................................18

     C.    The 2015 IOO Agreement Did Not Establish a New Contractual
          Relationship Between Town Car and the Arbitration Plaintiffs. ........23

II.    THE SECOND CIRCUIT SHOULD STAY THE REMAINING
     CLAIMS PENDING ARBITRATION. ..........................................26

CONCLUSION .............................................................................28

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Am. Pipe & Constr. Co. v. Utah*,
    414 U.S. 538 (1974)............................................................................27

*Applied Energetics, Inc. v. NewOak Capital Mkts., LLC*,
    645 F.3d 522 (2d Cir. 2011) .............................................................24

*Arciniaga v. Gen. Motors Corp.*,
    460 F.3d 231 (2d Cir. 2006) .............................................................16

*Arrigo v. Blue Fish Commodities, Inc.*
    408 F. App'x 480 (2d Cir. 2011) .................................................passim

*AT&T Mobility v. Concepcion*,
    563 U.S. 333 (2011)...........................................................................16

*Coenen v. R. W. Pressprich & Co.*,
    453 F.2d 1209 (2d Cir. 1972) .....................................................17, 19

*Green Tree Fin. Corp. v. Bazzle*,
    539 U.S. 444 (2003)...........................................................................20

*Guyden v. Aetna, Inc.*,
    544 F.3d 376 (2d Cir. 2008) .....................................................16, 26

*Holick v. Cellular Sales of N.Y., LLC*,
    802 F.3d 391 (2d Cir. 2015) .....................................................passim

*Katz v. Cellco P'ship*,
    794 F.3d 341 (2d Cir. 2015) .............................................................13

*Klein v. ATP Flight Sch., LLP*,
    No. 14–CV–1522 (JFB) (GRB), 2014 WL 3013294 (E.D.N.Y. July 3,
    2014) ................................................................................................26

*Kudlek v. Sunoco, Inc.*,
    610 F. Supp. 2d 218 (E.D.N.Y. 2009) ............................................25

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ................................................................16

*Peerless Imps., Inc. v. Wine, Liquor & Distillery Workers Union Local One*,
  903 F.2d 924 (2d Cir. 1990) ...............................................20

*Reid v. Supershuttle Int'l, Inc.*,
  No. 08-cv-04854 (JG) (VVP), 2010 WL 1049613 (E.D.N.Y. Mar. 22, 2010) ..........................................................................19, 20, 21

*Saleem v. Corp. Transportation Group, Ltd.*,
  854 F.3d 131 (2d Cir. 2017) ...............................................27

*Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*,
  198 F.3d 88 (2d Cir. 1999) ................................................17

*Stewart v. Target Corp.*,
  No. 11-CV-3557 (DLI) (RER), 2013 WL 1182080 (E.D.N.Y. Mar. 20, 2013) .........................................................................24

*Vera v. Saks & Co.*,
  335 F.3d 109 (2d Cir. 2003) ...............................................20

## Statutes

9 U.S.C. § 16 ...................................................................2, 7

28 U.S.C. § 1331 ...................................................................1

28 U.S.C. § 1343 ...................................................................1

28 U.S.C. § 1367(a) ...............................................................1

29 U.S.C. § 216(b) ................................................................27

## Other Authorities

Fed. R. Civ. P. 12(b)(6) .........................................................11

Fed. R. Civ. P. 23 ...............................................................27

## STATEMENT OF JURISDICTION

Plaintiffs-Appellees ("Plaintiffs") filed the underlying lawsuit against Town Car and individual defendants Zachary Berman and John M. Ahern (collectively, "Town Car" or "Defendants") in the United States District Court for the Eastern District of New York on December 2, 2015. (JA 14.) Plaintiffs asserted claims under the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), and the New York Code of Rules and Regulations ("NYCRR"). (JA 14-16.)

Plaintiffs invoked federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction under 28 U.S.C. § 1367(a). (JA 16.) Town Car moved to dismiss the complaint and to compel arbitration on January 26, 2016. (JA 48.)

On February 16, 2016, Plaintiffs filed an Amended Complaint, adding additional named plaintiffs. (JA 93.) On March 4, 2016, Town Car moved to compel arbitration of the claims of those Plaintiffs who had signed agreements to arbitrate, to dismiss the individual defendants, and to stay any remaining claims pending arbitration. (JA 127.) The District Court referred the motion to the Magistrate Judge for a report and recommendation on June 16, 2016. (JA 10.) On September 7, 2016, the Magistrate Judge issued a Report and Recommendation, recommending denial of Town Car's motion. (JA 298.) Town Car filed its

1

objections to the Report and Recommendation on September 26, 2016.  (JA 325.)

On March 31, 2017, the District Court adopted the Report and Recommendation.

(SPA 1.)

Town Car filed a notice of appeal on April 11, 2017.  (JA 369.)  The Court

has appellate jurisdiction under 9 U.S.C. § 16.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.      Whether the District Court's denial of Town Car's motion to compel arbitration as to Named Plaintiffs Mohammed O. Faroque ("Faroque") and Asad Ikbal ("Ikbal") (collectively, the "Arbitration Plaintiffs"), and as to any other putative class and collective members who signed arbitration agreements, was in error and should be reversed because it misapplied the Court's precedent, departing from the long-standing presumption of arbitrability.

2.      Whether the District Court's denial of Town Car's motion to stay the remaining claims as to Named Plaintiffs Khaled Khan, MD Imranul Haque, Khandker Haque, Mohammed S. Alam, and Mohammed E. Karim (collectively, the "Non-Arbitration Plaintiffs"), and as to any other putative class and collective members who did not sign arbitration agreements, pending arbitration of the Arbitration Plaintiffs' claims was in error because it was based on the erroneous conclusion that Town Car's motion to compel arbitration should be denied.

## PRELIMINARY STATEMENT

Town Car seeks review of the District Court's order denying Town Car's motion to compel arbitration of the Arbitration Plaintiffs' claims and to stay the remaining claims of the Non-Arbitration Plaintiffs in the District Court pending completion of the arbitration process because the order runs contrary to the Second Circuit's presumption of arbitrability. The Court has adopted a strong presumption in favor of arbitration, which can only be overcome by "positive assurance" that the arbitration provision does not apply to the dispute at issue. This presumption of arbitrability mirrors federal policy and Supreme Court jurisprudence, both of which agree that any doubts should be resolved in favor of arbitration. Here, the District Court erred when it refused to compel arbitration based on narrow constructions of law and fact. Reversal of the District Court's order is therefore warranted.

The claims of the Arbitration Plaintiffs are subject to valid arbitration agreements. The District Court concluded, erroneously, that those arbitration agreements did not apply to claims that accrued before the arbitration agreements were signed. Its conclusion was based on two flawed interpretations of the type of "positive assurance" needed to overcome the presumption of arbitrability in the Second Circuit.

4

*First*, the District Court erred in determining that the mere date of execution of an arbitration agreement was sufficient to overcome the presumption of arbitrability for claims that accrued before the agreement was executed. The arbitration agreements at issue contained no express temporal limitation. Accordingly, the District Court's inference—that the arbitration agreements presumptively only covered disputes that arose after they were signed—was inappropriate and contrary to relevant law. Indeed, this inference was insufficient "positive assurance" to overcome the presumption that the arbitration provisions applied to both pre-existing and future claims.

*Second*, the District Court erred in determining that the arbitration provisions at issue only applied prospectively because the agreements containing these arbitration provisions established a new contractual relationship between the parties. The earlier agreements signed by the Arbitration Plaintiffs are nearly identical to their current agreements—indeed, the only change is the addition of the arbitration provisions. Significantly, the nature of the parties' relationship did not change between the signing of their current agreements and their earlier agreements. Further, their current agreements state that they revoke and supersede all earlier agreements. Under Second Circuit precedent, the current agreements stand in the shoes of the earlier agreements signed by the Arbitration Plaintiffs and,

therefore, the arbitration provisions were not limited to claims that accrued only after they signed the current agreements.

Town Car also appeals the District Court's denial of its motion to stay the remaining claims of the Non-Arbitration Plaintiffs pending arbitration. The District Court denied the motion to stay as moot in light of its denial of Town Car's motion to compel arbitration. Because the motion to compel arbitration was denied in error, the motion to stay was also denied in error and without proper consideration.

In sum, there was no evidence below of the requisite "positive assurance" to overcome the presumption of arbitrability. For this reason, the District Court's order should be reversed and Town Car's motion to compel arbitration and to stay the remaining claims pending arbitration should be granted.

## STATEMENT OF THE CASE

## I.  FACTUAL BACKGROUND

### A.  Town Car's Business and Relationship With IOOs

Town Car contracts with business, financial, and professional firms to provide executive ground transportation services.  (JA 162 at ¶ 3.)  To provide these services, Town Car separately contracts with independent owner-operators of vehicles ("IOOs").  (*Id.* at ¶ 4.)  Town Car enters into an affiliation relationship with each IOO on an independent contractor basis, the terms and conditions of which are codified in a written services contract with Town Car ("IOO Agreement").  (*Id.* at ¶ 5.)

IOOs are in business for themselves, as independent professionals who provide skills and equipment that Town Car does not have.  (*Id.* at ¶ 6.)  Town Car owns no vehicles to transport clients and does not employ drivers; it essentially functions as an intermediary between its corporate clients who need executive transportation services and professional independent owner-operators of vehicles who offer their services to anyone who will pay for them.  (*Id.*)  IOOs are paid on a Form 1099 basis as independent contractors, pursuant to their IOO Agreements.  (JA 163 at ¶ 7.)  They are at liberty to—and often do—provide services to other companies and livery bases, as well as to their own private clients, and are free from supervision, direction, or control in the performance of those services.  (*Id.* at ¶ 8.)

7

Pursuant to the IOO Agreement, each IOO, including each of the Plaintiffs, determines his own hours of work, determines where he wants to work, determines how to dress for work, and determines how to perform the services he provides. (*Id.* at ¶¶ 9, 12.) Each IOO, including each of the Plaintiffs, owns and uses his own vehicle and pays for all his own expenses, including, but not limited to, gas, oil, insurance, maintenance, tolls, parking, and cell phone. (*Id.* at ¶¶ 10-11.) IOOs do not have to personally perform the services (*i.e.*, they can hire their own employees and engage substitute drivers). (*Id.* at ¶ 13.) IOOs own, operate, and maintain their own vehicles, and are free to refuse an opportunity to provide services to TCI clients at any time for any reason. (*Id.* at ¶ 10.)

**B.     Town Car's Business Relationship With Plaintiffs**

Each of the Plaintiffs is or was an IOO who entered into an IOO Agreement with Town Car to provide executive ground transportation services to clients. (JA 163 at ¶¶ 18-21, 23-32.) The IOO Agreements signed by a number of IOOs (including the Arbitration Plaintiffs) include agreements to arbitrate claims against Town Car. (*Id.* at ¶ 17.) The Arbitration Plaintiffs agreed in Section 11 of their IOO Agreements that "[a]ll claims and disputes arising under or relating to this Agreement…are to be settled by individual binding arbitration in the state of New York, County of Queens." (JA 177, 192.) This section also states that "[e]ach party to the arbitration shall pay its own litigation costs and attorneys' fees. The

8

parties shall share in the cost of the arbitrator. This agreement to arbitrate shall survive the termination of this Agreement and the IOO's affiliation with [Town Car]." (JA 178, 193.) Each Arbitration Plaintiff initialed each page of the IOO Agreement to reflect his agreement to each of the terms set forth, including the agreement's arbitration provisions. (JA 167-180, 182-195.)

Town Car began incorporating arbitration provisions into all IOO Agreements in 2015, and each IOO who was still affiliated with Town Car at that time signed a new IOO Agreement containing an agreement to arbitrate claims against Town Car. (JA 163 at ¶ 15.) IOOs who had disaffiliated or otherwise terminated their business relationship with Town Car prior to 2015 (including the Non-Arbitration Plaintiffs) had signed an earlier version of the IOO Agreement that did not contain any agreement to arbitrate. (JA 197, 210, 223, 236, 249.) The IOO Agreements signed by the Non-Arbitration Plaintiffs are nearly identical to those signed by the Arbitration Plaintiffs except for the addition, in 2015 and afterwards, of the arbitration provision. (*Compare* JA 167, 182 *with* JA 197, 210, 223, 236, and 249.)

The Arbitration Plaintiffs' IOO Agreements do not contain *any* language that limits the application of the arbitration provision prospectively or retroactively. (JA 167, 182.) To the contrary, the Arbitration Plaintiffs agreed to arbitrate *all* claims and that "*any and all prior agreements…are hereby terminated*

9

*and canceled in their entirety and are of no further force and effect*." (JA 177, 192) (emphasis added). The plain meaning and effect of this language is that any prior IOO Agreements signed by the Arbitration Plaintiffs are no longer valid or enforceable. In other words, once an Arbitration Plaintiff signed the 2015 version of the IOO Agreement containing an arbitration provision, that IOO Agreement was the only contract governing the relationship between the Arbitration Plaintiff and Town Car.

Other than the addition of an agreement to arbitrate claims, the IOO Agreements signed by each Arbitration Plaintiff in or after 2015 did not change or alter the relationship between Town Car and the IOO, *i.e.*, the independent contractor relationship. (*Compare* JA 167, 182 *with* JA 197, 210, 223, 236, 249.) The Arbitration Plaintiffs—and indeed, all IOOs—performed the same services vis-à-vis Town Car both before and after arbitration provisions were added to their IOO Agreements. (*Id.*) The only thing that changed was the agreement to arbitrate their disputes. (*Id.*) The IOO Agreements with arbitration provisions did, however, supersede any prior IOO Agreements so as to give full force and effect to the agreement to arbitrate claims. (JA 177, 192.)

## II.  **PROCEDURAL HISTORY**

On February 16, 2016, Plaintiffs filed an Amended Complaint. (JA 93.) Each of the Plaintiffs, on behalf of themselves and others similarly situated, allege

that they were misclassified as independent contractors and not paid all fees owed to them under their IOO Agreements in violation of the FLSA, the NYLL, and the NYCRR. (*See e.g.*, JA 93-95, 101-04.) Each Plaintiff's and putative class and collective member's claims therefore arise under and relate to each individual's IOO Agreement. (*Compare e.g.*, JA 103-104, ¶¶ 53-58 *with* JA 168-172, JA 183-187, 198-201, 211-214, 224-227, 237-240, 250-252, §§ 2, 3.) There is no way to adjudicate Plaintiffs' claims without reference to their respective IOO Agreements, which govern the terms and conditions of their relationships with Town Car.

On March 4, 2016, Town Car filed a motion to compel arbitration as to the Arbitration Plaintiffs, to dismiss the individual defendants,[1] and stay any remaining claims pending arbitration. (JA 127.)

On September 7, 2016, the Magistrate Judge issued a Report and Recommendation, recommending the denial of Town Car's motion (JA 298.) On September 26, 2016, Town Car filed objections to the Report and Recommendation. (JA 325.)

---

[1] Plaintiffs had named TCI officers Zachary Berman and John Ahern as individual defendants. The Report and Recommendation also recommended that Defendants' motion to dismiss the Individual Defendants under Fed. R. Civ. P. 12(b)(6) be denied. (JA 317-322.) Although Town Car disagrees with the recommendation on this issue and may later move to dismiss the individual defendants, Town Car did not object to this portion of the Report and Recommendation, and it is not an issue on appeal.

On March 31, 2017, the District Court adopted the Magistrate Judge's Report and Recommendation.  (SPA 1.)   The District Court held that the arbitration provision in the Arbitration Plaintiffs' 2015 IOO Agreements did not apply retroactively because the arbitration provision stated that it applied to "[a]ll claims and disputes arising under or relating to this [IOO] Agreement."  (SPA 6-8.) The District Court further held that the 2015 IOO Agreements did not effectively revoke the previous IOO Agreements because the 2015 IOO Agreements did not pertain to the same subject matter as the earlier agreements and did not revoke any specific earlier agreements.  (SPA 8.)  The District Court also denied Town Car's motion to stay because it denied the motion to compel arbitration, concluding that the motion to stay was therefore moot.  (SPA 9.)

Town Car filed a Notice of Appeal on April 11, 2017.  (JA 369.)

## STANDARD OF REVIEW

The Second Circuit reviews *de novo* a district court's refusal to compel arbitration and a denial of a motion to stay proceedings pending arbitration. *See e.g.*, *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 n.4 (2d Cir. 2015) ("This Court reviews *de novo* the district court's decision to deny a motion to compel arbitration."); *Katz v. Cellco P'ship*, 794 F.3d 341, 344 n.4 (2d Cir. 2015), c*ert. denied*, 136 S. Ct. 596 (2015) (the standard of review is *de novo* for denials of motions to stay proceedings pending arbitration). Both of the issues presented on appeal in this matter will therefore be decided under a *de novo* standard of review.

## <u>SUMMARY OF ARGUMENT</u>

This Court has unequivocally adopted a presumption of arbitrability, and that presumption of arbitrability is not mitigated or lessened when determining whether to apply an arbitration agreement to claims that accrued before the agreement was signed. In fact, the presumption favoring arbitration can only be overcome by positive assurance that the arbitration agreement does not apply to all of the underlying claims. Here, the District Court erred as a matter of law and fact when it denied Town Car's motion to compel arbitration because the inferences drawn by the District Court were insufficient positive assurance required to overcome the presumption of arbitrability as to the Arbitration Plaintiffs' pre-existing claims.

The order should be reversed on this basis because the arbitration provisions as well as the IOO Agreements themselves contained no express temporal limitation, and the date of execution of the IOO Agreements by the Arbitration Plaintiffs cannot fill that void. In addition, reversal is warranted because, under Second Circuit law, the Arbitration Plaintiffs' 2015 IOO Agreements revoked all of their previous IOO Agreements and stand in their place.

Similarly, the denial of the motion to stay the remaining claims should be reversed because the District Court erred in not granting Town Car's motion to

compel arbitration.  When the applicable Second Circuit factors are analyzed, a stay of the remaining claims pending arbitration of the arbitrable claims is merited.

## ARGUMENT

### I.   THIS COURT SHOULD REVERSE THE DISTRICT COURT'S DENIAL OF THE MOTION TO COMPEL ARBITRATION.

#### A.   The District Court Did Not Properly Apply the Second Circuit's Presumption of Arbitrability.

Following Supreme Court jurisprudence, the Second Circuit applies a strong presumption in favor of arbitration and has directed that any doubts "should be resolved in favor of coverage." *Holick v. Cellular Sales of N.Y., LLC ("Holick")*, 802 F.3d 391, 395 (2d Cir. 2015) (internal quotations omitted); *see also, e.g.*, *AT&T Mobility v. Concepcion*, 563 U.S. 333, 344-346 (2011) (Supreme Court jurisprudence "place[s] it beyond dispute that the FAA was designed to promote arbitration"); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (federal courts hold that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration"); *Arrigo v. Blue Fish Commodities, Inc. ("Arrigo")*, 408 F. App'x 480, 481 (2d Cir. 2011) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. . . .") (quoting *Moses H. Cone*, 460 U.S. at 24-25); *Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008) (the Federal Arbitration Act demonstrates the strong policy in favor of arbitration agreements); *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006) ("[I]t is difficult to overstate the strong federal policy in favor of arbitration….").

16

Under this presumption, a dispute is deemed covered by an arbitration agreement absent "positive assurance" to the contrary. *See e.g.*, *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 99 (2d Cir. 1999) ("[T]he existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."); *Holick,* 802 F.3d at 395 (the presumption of arbitrability can *only* be overcome with "positive assurance" that the agreement to arbitrate *does not* cover the dispute at issue).

Positive assurance in the form of any time or scope limitations applied to an arbitration provision must be expressed, and not inferred. *See Arrigo*, 408 F. App'x at 482-83 ("[N]othing in the arbitration provision places a temporal limitation on arbitrability."); *Coenen v. R. W. Pressprich & Co.*, 453 F.2d 1209, 1212 (2d Cir. 1972) (noting that parties to an arbitration agreement could have included language expressly limiting the agreement to future disputes if that was what they intended). In the absence of any express limitations, all doubts must be resolved in favor of arbitration. *See Holick*, 802 F.3d at 395; *Arrigo*, 408 F. App'x at 482. These requirements are not lessened or relaxed when determining whether an arbitration provision applies to claims that accrued before the agreement to arbitrate is signed. *See Holick*, 802 F.3d at 398-99 (applying the presumption

17

when analyzing whether an arbitration provision applied retroactively); *Arrigo*, 408 F. App'x at 482-83 (applying an arbitration provision retroactively because any doubts should be resolved in favor of coverage).

The 2015 IOO Agreements signed by the Arbitration Plaintiffs did not contain any express limitations, either in time or scope, with respect to their arbitration provisions. (JA 167, 182.) Moreover, these agreements expressly stated that all prior agreements between the parties were terminated. (JA 177, 192.) In other words, once the Arbitration Plaintiffs signed their 2015 IOO Agreements containing an agreement to arbitrate claims, those IOO Agreements were the only operative agreements governing their relationship with Town Car. The District Court therefore erred in denying Town Car's motion to compel arbitration, and reversal is warranted.

### B. The District Court's Inferred Time Limitation Does Not Constitute Positive Assurance to Overcome the Presumption of Arbitrability.

Although the 2015 IOO Agreements lacked an express time limitation as to the arbitration provisions' applicability, the District Court nonetheless inferred the existence of one by using the date the agreements were executed. The District Court's reasoning runs contrary to the presumption of arbitrability and is not supported as a matter of law.

Decades of Second Circuit precedent has held that arbitration provisions like the one in this case apply to pre-existing claims absent express language to the contrary. *See, e.g.*, *Arrigo*, 408 F. App'x at 482 (compelling arbitration of pre-existing claims because "nothing in the arbitration provision place[d] a temporal limitation on arbitrability"); *Coenen*, 453 F.2d at 1212 (noting that parties to an arbitration agreement could have included language expressly limiting the agreement to future disputes if that was what they intended); *see also Reid v. Supershuttle Int'l, Inc. ("Reid"),* No. 08-cv-04854 (JG) (VVP), 2010 WL 1049613, at *5 (E.D.N.Y. Mar. 22, 2010) (holding that "arbitration clauses without an express limitation to 'future disputes' should be applied to any preexisting claims").

The holdings in *Arrigo* and *Reid* are instructive here. In *Arrigo*, this Court rejected the plaintiff's argument that the arbitration provision did not apply to claims that accrued prior to the plaintiff's signing of the arbitration agreement. *See* 408 F. App'x at 481-82. Even though the plaintiff in *Arrigo* had waived the argument (by raising it for the first time on appeal), the Court noted that "nothing in the arbitration provision places a temporal limitation on arbitrability," *id.*; that the parties' "agreement 'to substitute' arbitration for judicial resolution of disputes indicates that the parties anticipated arbitration as the primary method of dispute resolution," *id.* at 482; that "[a]s a result, the [arbitration] agreement is at least

19

'susceptible of an interpretation' that it covers preexisting disputes between the parties," *id*. (citing *Peerless Imps., Inc. v. Wine, Liquor & Distillery Workers Union Local One*, 903 F.2d 924, 928 (2d Cir. 1990)); and that "if there is doubt about that matter—about the 'scope of arbitrable issues'—we should resolve that doubt 'in favor of arbitration,'" *id*. (citing *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) and *Vera v. Saks & Co.*, 335 F.3d 109, 117 (2d Cir. 2003)).

The Court concluded that the arbitration provision applied to all of the plaintiff's claims, including claims that accrued before the arbitration agreement was signed. *See* 408 F. App'x at 482. In the most recent Second Circuit decision to address this issue, *Holick*, 802 F.3d 391, the Court reiterated that "broad arbitration provisions that contain no express temporal limitation can apply to claims that arose prior to the execution of the arbitration agreement." 802 F.3d at 397.

The district court in *Reid* conducted a similar analysis and reached the same conclusion. As in this case, there were prior agreements (containing no arbitration provisions) that were later superseded by recent agreements (containing arbitration provisions). *See Reid*, 2010 WL 1049613, at *5-6. The plaintiffs argued in *Reid*—as the District Court held in this case—that the arbitration provisions they signed only covered claims arising *after* they signed the more recent agreements. *Id*. at *5. The district court disagreed, holding that "[t]he relevant question is not when

20

the plaintiffs' claims arose, but whether they arise under their agreements with the defendants." *Id.* at *6. The rationale for the court's decision in *Reid* was that—as here—the issues and claims arose under and related to the agreements with arbitration provisions, even though they concerned (in part) time periods prior to the execution of the new agreements. *Id.*

Accordingly, under Second Circuit law, the Arbitration Plaintiffs must show "positive assurance" that the relevant arbitration provisions exclude claims that accrued before the 2015 IOO Agreements were signed, *i.e.*, the arbitration provisions, or some other equivalent proof, must affirmatively demonstrate that the they do not apply to pre-existing claims—not the other way around. The District Court, however, failed to analyze Town Car's motion to compel under these principles and instead, in effect, applied the very construction that *Arrigo, Holick* and *Reid* rejected. The District Court held that the presumption of arbitrability was overcome because (i) the Arbitration Plaintiffs' 2015 IOO Agreements failed to explicitly state that the arbitration provisions applied retroactively, *and* (ii) the parties executed the 2015 IOO Agreements *after* the claims at issue here accrued. This inference and construction by the District Court would mean that the decisions in *Arrigo*, *Holick* and *Reid* were wrong and that absent express language, an arbitration agreement would never apply to claims that accrued before the

agreement was executed because the date of execution always controls. This is a misinterpretation of Second Circuit law.

Here, the arbitration provisions in the Arbitration Plaintiffs' current IOO Agreements expressly apply to "*[a]ll* claims and disputes arising under or relating to this [IOO] Agreement." (JA 177, 192) (emphasis added). Moreover, the parties do not dispute that there is no express temporal limitation within the document itself. The District Court nonetheless inferred that the use of the word "this" in "this [IOO] Agreement" coupled with the absence of a temporal limitation was sufficient indication that the arbitration provision only applied to claims accruing after the current IOO Agreements were signed. (SPA 6-9.) Such inferences and assumptions not only fall short of this Court's requirements for "positive assurance" but run afoul of this Court's holding in *Holick* that any doubt "should be resolved in favor of coverage." 802 F.3d at 395.

In addition, the language of the 2015 IOO Agreement also negates the District Court's construction of "this IOO Agreement." (JA 167, 182.) As discussed more fully below, the Arbitration Plaintiffs executed IOO Agreements prior to the 2015 IOO Agreements; the only difference between the 2015 IOO Agreements and the earlier IOO Agreements was the addition of the arbitration provision. (*Compare* JA 167, 182 *with* JA 197, 210, 223, 236, 249.) Rather than add the arbitration provision to the old IOO Agreements as an addendum and to

22

dispel any confusion as to which IOO Agreements controlled, the Arbitration
Plaintiffs' 2015 IOO Agreements explicitly state that they superseded and replaced
all prior IOO Agreements—meaning the 2015 IOO Agreements stand in the shoes
of all prior IOO Agreements *and* the arbitration provisions apply to the parties'
entire relationship, both prospectively and retroactively.  (JA 177, 192.)

The District Court's decision to deny Town Car's motion to compel
arbitration should therefore be reversed, and the Arbitration Plaintiffs and any
putative class or collective members who signed arbitration agreements should be
compelled to arbitrate all of their claims against Town Car.

### C.    The 2015 IOO Agreement Did Not Establish a New Contractual Relationship Between Town Car and the Arbitration Plaintiffs.

The District Court also erred as a matter of law when it inferred that the
2015 IOO Agreement established a new relationship between Town Car and the
Arbitration Plaintiffs, thereby limiting the arbitration provision to prospective
application from the date of execution of the 2015 IOO Agreements.  (SPA 8-9.)
That determination, though, is contradicted by the facts in this case and the law in
this Circuit.

In holding that the 2015 IOO Agreements failed to revoke and supersede all
previous agreements signed by the Arbitration Plaintiffs, the District Court stated
that "a subsequent contract *not pertaining to the same subject matter* will not
supersede an earlier contract unless the subsequent contract has definitive language

23

indicating it revokes, cancels or supersedes that *specific* prior contract." (SPA 8) (quoting *Stewart v. Target Corp.*, No. 11-CV-3557 (DLI) (RER), 2013 WL 1182080, at *3 (E.D.N.Y. Mar. 20, 2013) (emphasis added)). The District Court's reliance on this single quote from *Stewart* is misplaced.

The *Stewart* court also held that it is "well established that a subsequent contract *regarding the same matter* will supersede the prior contract." 2013 WL 1182080, at *3 (quoting *Applied Energetics, Inc. v. NewOak Capital Mkts., LLC*, 645 F.3d 522, 526 (2d Cir. 2011) (emphasis added)). Here, except for the inclusion of the arbitration provision, the 2015 IOO Agreements are almost identical to the earlier IOO Agreements and govern the exact same relationship between the parties, *i.e.*, the same subject matter. (*Compare* JA 167, 182 *with* JA 197, 210, 223, 236, 249.) This crucial fact here is what distinguishes this case from the Court's decision in *Holick*, where the Court held that positive assurance existed to overcome the presumption because the contractual relationship between the parties significantly changed. 802 F.3d at 397 (holding that the profound change in the relationship between plaintiffs and defendants from one of independent contractor to employee constituted the "positive assurance" needed to demonstrate that the arbitration clause did not cover the dispute at issue). At all times in this case, the relationship between the Arbitration Plaintiffs and Town Car remained the same. (*Compare* JA 167, 182 *with* JA 197, 210, 223, 236, 249.)

24

There was not, as there was in *Holick*, a fundamental change in the nature of the relationship between the parties (*i.e.*, an agreed-upon change from an independent contractor relationship to an employer-employee relationship).

Further, the sole act of entering into the 2015 IOO Agreements is not sufficient to establish a new relationship between Town Car and the Arbitration Plaintiffs. It is a well-established principle of contract law that superseding agreements do not necessarily alter the parties' fundamental relationship. *E.g., Kudlek v. Sunoco, Inc.*, 610 F. Supp. 2d 218, 224 (E.D.N.Y. 2009) ("Here, while Plaintiffs and [defendant] terminated the prior franchise agreements . . . they did not terminate the 'franchise relationship,' because the parties entered into new franchise agreements[.]"). This fact is underscored by the 2015 IOO Agreements, which expressly state that any prior agreements signed by the parties are no longer valid or enforceable, *i.e.*, the current IOO Agreement signed by each Arbitration Plaintiff replaces any prior agreements they signed. (JA 177, 192.)

For these reasons, under basic principles of contract law, the Arbitration Plaintiffs' current IOO Agreements effectively revoked their prior IOO Agreements, and the arbitration provisions in their 2015 IOO Agreements apply retroactively, and the District Court's order should be reversed.

II.    **THE SECOND CIRCUIT SHOULD STAY THE REMAINING**
       **CLAIMS PENDING ARBITRATION.**

The District Court's denial of Town Car's motion to stay the remaining

claims pending arbitration was also in error.  (SPA 9.)  The District Court denied

Town Car's motion to stay because it held that it was moot in light of the decision

denying the motion to compel arbitration.  (*Id.*)  As discussed above, the District

Court erred in its decision to deny Town Car's motion to compel.  Accordingly, the

motion to stay was not moot, and for the reasons set forth below, a stay is

warranted.

When some but not all of the claims in a case are sent to arbitration, the

Court decides whether to stay the balance of the proceedings pending arbitration.

*See, e.g.*, *Guyden*, 544 F.3d at 382.  A party seeking to stay nonarbitrable claims

must show that "there are issues common to the arbitration and the court

proceeding, and then show that those issues will be finally determined by

arbitration."  *Klein v. ATP Flight Sch., LLP*, No. 14–CV–1522 (JFB) (GRB), 2014

WL 3013294, at *11 (E.D.N.Y. July 3, 2014) (internal quotations omitted).

The Arbitration Plaintiffs' claims to be resolved in arbitration are the exact

same claims the Non-Arbitration Plaintiffs will litigate in the District Court:

whether each individual is an independent contractor under the FLSA, the NYLL,

and the NYCRR, and whether each individual was paid in accordance with the

IOO Agreement and applicable federal and state law.  (*See e.g.*, JA 93-95, 101-04.)

26

Moreover, regardless of forum, the factors controlling the merits of this case will be those recently set forth by the Court in *Saleem v. Corp. Transportation Group, Ltd.*, 854 F.3d 131 (2d Cir. 2017), which affirmed summary judgment for the defendants and held that independent owner-operators of vehicles affiliated with entities similar to Town Car were indeed independent contractors under the FLSA.

In addition, the requested stay will not result in undue hardship to the Non-Arbitration Plaintiffs, or to the putative class and collective members. Staying the action pending arbitration will not affect any statute of limitations issues for the putative class and collective members because all Fed. R. Civ. P. 23 class claims will be tolled from the date of filing, *see American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554 (1974), and under the FLSA, the statute of limitations will be tolled from the date each putative collective member files a consent to join. *See* 29 U.S.C. § 216(b).

But continuing this litigation while arbitration is pending will result in undue hardship for Town Car because it will be forced to spend time and money litigating the same issues in multiple forums simultaneously. That hardship to Town Car is amplified because there is a significant risk of conflicting decisions with respect to the resolution of the claims under the terms of the IOO Agreements. That risk will also yield judicial inefficiencies, unnecessary expenditures of time and resources by the parties, and inconsistent directives to Town Car and its IOOs.

27

For all of these reasons, the Court should grant Town Car's motion to stay the remaining claims pending arbitration.

## CONCLUSION

For the foregoing reasons, this Court should reverse the District Court's decision and grant Town Car's motion to compel arbitration and to stay the remaining claims pending arbitration.

Dated: July 14, 2017                  Respectfully submitted,

*/s/ Allan S. Bloom*

ALLAN S. BLOOM
PROSKAUER ROSE LLP
11 Times Square
New York, New York 10036
(212) 969-3000

NICOLE A. EICHBERGER
PROSKAUER ROSE LLP
650 Poydras Street, Suite 1800
New Orleans, Louisiana 70130
(504) 310-4088

*Attorneys for Defendants-Appellants*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

The undersigned hereby certifies, pursuant to Federal Rule of Appellate Procedure 32, that the foregoing brief complies with the type volume limitation set forth in Federal Rules of Appellate Procedure 32(a)(5) and (7)(B)(i), in that the brief uses the Times New Roman 14 point font and contains no more than 13,000 words.

Specifically, in accordance with Federal Rule of Appellate Procedure 32(g), the Microsoft Word "Word Count" tool indicates that the brief contains 5,461 words. That word count includes "headings, footnotes, and quotations," but excludes the "corporate disclosure statement, table of contents, table of citations, a statement with respect to oral argument, an addendum containing statutes, rules or regulations, and any certificates of counsel." Fed. R. App. P. 32(f).

Dated: July 14, 2017

*/s/ Allan S. Bloom*
Allan S. Bloom

SPECIAL APPENDIX

**TABLE OF CONTENTS**

PAGE

Memorandum and Order of the Honorable Dora L. Irizarry Adopting
    Report and Recommendation, dated March 31, 2017 . . . . . . . . . . . . . .  SPA-1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
MOHAMMAD O. FAROQUE, KHALED KHAN,   :
MD IMRANUL HAQUE, KHANDKER HAQUE,   :
MOHAMMED S. ALAM, ASAD IKBAL, and   :
MOHAMMED E. KARIM on behalf of themselves   :
and on behalf of all other similarly situated persons,   :
   :
           Plaintiffs,   :
   :
   -against-   :
   :
PARK WEST EXECUTIVE SERVICES, d/b/a   :
TOWN CAR INTERNATIONAL; TOWN CAR   :
INTERNATIONAL HOLDINGS, LLC; ZACHARY :
BERMAN, in his individual and professional   :
capacities; JOHN M. AHREN, in his individual and  :
professional capacities,   :
   :
           Defendants.   :
-----------------------------------------------------------------x

**MEMORANDUM AND ORDER
ADOPTING REPORT AND
RECOMMENDATION**
15-CV-6868 (DLI) (CLP)

**DORA L. IRIZARRY, Chief United States District Judge:**

On December 2, 2015, Plaintiff Mohammad O. Faroque ("Faroque") initiated this

proceeding individually and on behalf of all current and former similarly situated drivers who,

since December 2, 2009, had provided services to Defendants Park West Executive Services, d/b/a

Town Car International ("TCI"), Town Car International Holdings, LLC, Zachary Berman

("Berman"), and John M. Ahren ("Ahren") (collectively, "Defendants"), alleging various

violations of the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), and

the New York Code of Rules and Regulations ("NYCRR"). *See* Complaint ("Compl."), Dkt. Entry

No. 1. The proposed classes were described as the "FLSA Collective" and the "NYLL Class." *Id.*

at ¶¶ 2-6.

On January 26, 2016, Defendants filed a motion to compel arbitration and dismiss the complaint, claiming that a clause in Faroque's operative agreement with TCI ("2015 Agreement")[1] bound him to arbitrate his claims on an individual basis ("Arbitration Clause"). *See* Mem. of Law in Supp. of Def.'s Mot. to Compel Arb. & Dism. the Compl., Dkt. Entry No. 43-1. Instead of opposing the motion, on February 16, 2016, Faroque filed an Amended Complaint naming six additional plaintiffs: Khaled Khan ("Khan"), MD Imranul Haque ("M. Haque"), Khandker Haque ("K. Haque"), Mohammad S. Alam ("Alam"), Asad Ikbal ("Ikbal"), and Mohammad E. Karim ("Karim") (collectively with Faroque, the "Plaintiffs"). *See* Amended Complaint ("Am. Compl."), Dkt, Entry No. 54. Two new claims were added for minimum wage violations under the FLSA, NYLL, and NYCRR. *Id.* at ¶¶ 143-48, 161-66.

In the Amended Complaint, Plaintiffs proposed two general classes and two subclasses. The two proposed general classes, the "FLSA Collective" and the "NYLL Class," would consist of "Khan, M. Haque, K. Haque, Alam, Karim[,] and all" others similarly situated who never signed agreements requiring arbitration. *Id.* at ¶ 3. The two proposed subclasses, the "FLSA Subclass" and "NYLL Subclass," would consist of Faroque, Ikbal, and "all such other similarly-situated persons" who entered into agreements requiring arbitration (*i.e.*, the 2015 Agreement), but only sought relief for claims predating those contracts. *Id.* at ¶ 4.

On March 4, 2016, Defendants filed a motion requesting that this Court compel arbitration for Faroque and Ikbal, dismiss the individual defendants, and stay any remaining claims pending arbitration (the "Motion"). *See* Mem. of Law in Supp. of Defs.' Mot. to Compel Arb., Dism. the Ind. Defs., & Stay Any Remaining Claims ("Def. Mot."), Dkt. Entry No. 55-1. Plaintiffs opposed

---

[1] The "2015 Agreement" is a form contract that was signed by both Faroque and Ikbal. Copies of their executed contracts have been provided by Defendants. *See* Def. Mot. at Exs. A, B. The terms of the documents are identical. Accordingly, the Court will simply refer to the 2015 Agreement in the singular.

2

the Motion. *See* Pls.' Mem. of Law in Opp. to Mot. to Compel Arb., Dism. the Ind. Defs., & Stay All Remaining Claims ("Pl. Opp."), Dkt. Entry No. 56. Defendants filed their reply papers on March 31, 2016. *See* Reply Mem. of Law in Supp. of Defs.' Mot. to Compel Arb., Dism. the Ind. Defs., & Stay Any Remaining Claims ("Def. Reply"), Dkt. Entry No. 57.

On June 16, 2016, this Court referred the Motion to United States Magistrate Judge Cheryl L. Pollak for a Report and Recommendation ("R & R"). The magistrate judge issued a thorough and well reasoned R & R on September 7, 2016, and recommended that the Court deny all relief requested by Defendants. *See* R & R, Dkt. Entry No. 61. In sum, the magistrate judge determined that the Motion should be denied, *in toto*, because: (1) the language of the 2015 Agreement did not apply to claims accruing under previous contracts; (2) Plaintiffs stated claims against Berman and Ahern; and (3) there was no reason to stay the proceeding. *See* R & R at 10-26. On September 26, 2016, Defendants timely filed objections to the R & R. *See* Defs.' Objs. to Sept. 7, 2016 R & R ("Objs."), Dkt. Entry No. 64. Plaintiffs opposed. *See* Pls.' Mem. of Law in Opp. to Defs.' Objs. to Sept. 7, 2016 R & R ("Objs. Opp."), Dkt. Entry No. 65.

For the reasons set forth below, Defendants' objections are overruled and the R & R is adopted in its entirety.

## **DISCUSSION**[2]

When a party objects to an R&R, a district judge must make a *de novo* determination as to those portions of the R & R to which a party objects. *See* FED. R. CIV. P. 72(b)(3); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). Pursuant to the standard often articulated by the district courts of this Circuit, "[i]f a party simply relitigates his original arguments, the Court reviews the Report and Recommendation only for clear error." *Antrobus v. New York City Dep't*

---

[2] The Court assumes familiarity with the facts as outlined in the R & R. *See* R & R at 3-10.

*of Sanitation*, No. 11-CV-5434 (CBA) (LB), 2016 WL 5390120, at * 1 (E.D.N.Y. Sept. 26, 2016) (internal citations and quotation marks omitted); *see also Rolle v. Educ. Bus Transp., Inc.*, No. 13-CV-1729 (SJF) (AKT), 2014 WL 4662267, at *1 (E.D.N.Y. Sept. 17, 2014) ("[A] rehashing of the same arguments set forth in the original papers . . . would reduce the magistrate's work to something akin to a meaningless dress rehearsal.") (internal citations and quotation marks omitted). On the other hand, the Second Circuit Court of Appeals has suggested that a clear error review may not be appropriate "where arguably 'the only way for [a party] to raise . . . arguments [is] to reiterate them.'" *Moss v. Colvin*, 845 F.3d 516, 520 n.2 (2d Cir. 2017) (quoting *Watson v. Geithner*, No. 11-CV-9527 (AJN), 2013 WL 5441748, at *2 (S.D.N.Y. Sept. 27, 2013)). Nonetheless, a court will not "ordinarily . . . consider arguments, case law and/or evidentiary material which could have been, but [were] not, presented to the magistrate judge in the first instance." *Santiago v. City of New York*, No. 15-CV-517 (NGG) (RER), 2016 WL 5395837, at *1 (E.D.N.Y. Sept. 26, 2016) (internal citation and quotation marks omitted). After its review, the district court may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." FED. R. CIV. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

A.     **DEFENDANTS' OBJECTIONS**

     Defendants present three objections: (1) the magistrate judge erred in applying the presumption of arbitrability and failed to identify a "positive assurance" that the subject arbitration clause did not apply retroactively; (2) the magistrate judge misconstrued the Second Circuit's holding in *Holick v. Cellular Sales of New York*, 802 F.3d 391 (2d Cir. 2015); and (3) the Court should stay the other Plaintiffs' claims pending resolution of the arbitration. *See* Objs. 6-18. They do not challenge that part of the R & R recommending that the Court deny Defendants' motion to dismiss the individual defendants, Berman and Ahren. *See generally*, *Id.*

4

The Court has reviewed the R & R *de novo* with respect to these objections and accepts the reasoning and recommendations of the magistrate judge in their entirety.

**B.**     **THE MAGISTRATE JUDGE PROPERLY DETERMINED THAT THE CLAIMS PREDATING THE FEBRUARY 2015 CONTRACT WERE NOT SUBJECT TO THE ARBITRATION CLAUSE**

The first two objections are simply two different ways of challenging the magistrate judge's finding that the Arbitration Clause did not apply retroactively. Having reviewed the magistrate judge's findings and determinations in detail, the Court finds that Defendants' objections are meritless and adopts the reasoning and recommendations of the magistrate judge. While the parties argued about the retroactivity of the Arbitration Clause before the magistrate, as the dispute seemingly centers on the significance of *Holick* and interpretation of controlling precedent, the Court will review this objection *de novo*. *See* Def. Mot. at 12-13; Pl. Opp. at 8-12; Def. Reply at 1-6; R & R 11-20; *see also* Objs. at 10-16.

The Second Circuit has explained that, in order to determine if a dispute "is arbitrable, [the Court] must answer two questions: (1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue." *Holick*, 802 F.3d at 394 (internal citations and quotation marks omitted). As to the second prong, if an arbitration clause "has no explicit temporal limitation," the Court must determine whether the subject matter of a dispute is included in that clause. *Id.* (internal citations omitted); *see also Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l*, 198 F.3d 88, 99 (2d Cir. 1999). Despite the general policy in favor of arbitration, it "is a matter of contract, and therefore a party cannot be required to submit" a dispute to arbitration if it has not contracted to do so. *Id.* at 395 (quoting *JLM Indus. v. Stolt-Nielsen SA*, 387 F.3d 163, 171 (2d Cir. 2004)) (internal quotation marks omitted).

There is no dispute that the parties agreed to arbitrate claims under the 2015 Agreement. R & R at 13. The sole question before the Court is whether the scope of the Arbitration Clause

includes Faroque's and Ikbal's claims that predate the 2015 Agreement. The Court finds that it does not.

In the R & R, the magistrate judge acknowledged the federal policy in favor of arbitration and a "presumption of arbitrability which may only be overcome by 'a positive assurance that the arbitration clause is not susceptible of an interpretation [*i.e.*, ambiguity] that covers the asserted dispute.'" R & R at 11 (quoting *Holick*, 802 F.3d at 395). Applying the presumption of arbitrability alongside principles of contract law, the magistrate judge found positive assurances[3] in the language of the Arbitration Clause and the parties' past practices that limited the Arbitration Clause to disputes arising after the parties signed the contract. *Id.* at 17-20.

In pertinent part, the Arbitration Clause, Section 11(a), reads as follows:

> All claims and disputes arising under or relating to this Agreement . . . are to be settled by individual binding arbitration in the [S]tate of New York, County of Queens. The arbitration shall be conducted on a confidential basis pursuant to the Commercial Arbitration Rules of the American Arbitration Association.

Def. Mot., Ex. A at 12-13; Def. Mot., Ex. B, at 12-13.[4] Here, the language of the 2015 Agreement speaks only to "this Agreement." Def. Mot., Ex. A at 12; Def. Mot., Ex. B, at 12. Looking to the jurisprudence from courts of concurrent jurisdiction, as a matter of contract interpretation, when successive contracts use the phrase "this Agreement," "[t]he subject matter of [the] clause is restricted by the phrase 'this Agreement." *TAPCO Underwriters, Inc. v. Catalina London Ltd.*, No. 14-CV-8434 (JSR), 2014 WL 7228711, at *4 (S.D.N.Y. Dec. 8, 2014); *see also Sempra Energy Trading Corp. v. Algoma Steel, Inc.*, No. 00-CV-9227 (GEL), 2001 WL 282684, at *7

---

[3] A "positive assurance" as to the applicability of an arbitration clause can be found by looking to the "contract's language, the timing of its execution, and the conduct of the parties." *Holick*, 802 F.3d at 398 (internal citations and quotation marks omitted).

[4] This pagination refers to the numbers generated electronically at the top of the page by ECF for ease of reference.

(S.D.N.Y. Mar. 22, 2001), *aff'd by* 300 F.3d 242 (2d Cir. 2002) (explaining that "forum selection clauses cannot operate to hijack any dispute that may exist . . . related or unrelated, and turn a dispute about some other contract . . . that would otherwise be litigated elsewhere into a dispute 'relating to' the agreement . . . .") (internal citations omitted). Accordingly, the Court does not find the Arbitration Clause to have any ambiguity that would necessitate further analysis. *Cf. Holick*, 802 F.3d at 397 ("Since the plain language of the Compensation Agreement is ambiguous, we turn to whether parol evidence sheds light on the parties' intent.").

Having reviewed the arguments and the relevant case law, the Court finds that *Holick* and the other controlling cases that Defendants cite in objecting to the R & R are inapposite. *See* Objs. at 7. In *Arrigo v. Blue Fish Commodities, Inc.*, 408 F. App'x 480 (2d Cir. Feb. 7, 2011), the claims concerned allegations regarding unpaid overtime wages under federal and state law. The Circuit determined that those claims were within the scope of the operative arbitration clause that "encompasse[d] 'all federal and state statutory claims' and 'any other . . . basis of action pertaining to [the plaintiff's] employment.'" *Id.* at 482 (internal citations omitted). In *Smith/Enron Cogeneration Ltd. P'ship*, the Circuit found that allegations of fraudulent inducement to contract were "related to" the resultant contract and, therefore, controlled by its arbitration clause. 198 F.3d at 99. In *Coenen v. R. W. Pressprich & Co.*, 453 F.2d 1209, 1212 (2d Cir. 1972), the Circuit found that an arbitration clause applied because it required the plaintiff to "arbitrate *any* controversy between members." (internal quotation marks omitted) (emphasis added). Finally, in *Holick*, the controversy concerned the following arbitration clause: "All claims, disputes, or controversies arising out of, or in relation to this document or Employee's employment with [defendant] shall be decided by arbitration." *Id.* at 393 (internal citations omitted). The Circuit only addressed the latter half of that clause and explicitly stated that it was not "analyz[ing] the portion of the

arbitration agreement that references 'disputes . . . arising out of, or in relation to this document.'" *Id.* at 394 n.6 (internal citations omitted). The parties have not cited, and the Court has not found, any opinion from the Second Circuit Court of Appeals squarely addressing the impact and significance of the limiting phrase "this Agreement" in an arbitration clause.

Defendants counter that the language of the Arbitration Clause is defeated by the inclusion of Section 10(a) of the contract, "the plain meaning and effect" of which means that the 2015 Agreement "stands in the shoes of the prior one[s]." Objs. at 15; *see also Id.* at 8-9; Def. Reply at 3. This is false.

According to Section 10(a),

> This Agreement sets forth the entire understanding between TCI and [the plaintiff] and any and all prior agreements, understandings, and representations are hereby terminated and canceled in their entirety and are of no further force and effect.

Ex. A at 12; Ex. B at 12. This Court previously has held that "a subsequent contract not pertaining to the same subject matter will not supersede an earlier contract unless the subsequent contract has definitive language indicating it revokes, cancels or supersedes that *specific* prior contract." *Stewart v. Target Corp.*, No. 11-CV-3557 (DLI) (RER), 2013 WL 1182080, at *3 (E.D.N.Y. Mar. 20, 2013) (internal citations and quotation marks omitted) (emphasis added). Section 10(a) does not have any language revoking any *specific* contract, but rather, generally states that "all prior agreements" are terminated. Ex. A at 12; Ex. B at 12. This provision is insufficient to permit the most recent agreements "stand in the shoes" of any previous contracts.

As discussed above, the language of the contract unambiguously restricts the Arbitration Clause to the 2015 Agreement thereby differentiating it from any other previous contracts, and Section 10(a) does not effectively revoke any previous agreements. The Court finds, as did the magistrate judge, that the Arbitration Clause does not apply to Faroque's and Ikbal's claims that

predate their execution of the 2015 Agreement. As such, the Court overrules Defendants'
objections and adopts the magistrate judge's recommendation that Defendants' motion to compel
arbitration be denied.

**C.     THE MAGISTRATE JUDGE PROPERLY DETERMINED THAT THE REMAINING CLAIMS
SHOULD NOT BE STAYED**

Defendants' remaining objection to the R & R is that the magistrate judge erred in
recommending that the Court deny their request to stay any other claims until the resolution of
arbitration concerning Faroque's and Ikbal's claims. Objs. at 16-18. Like their arguments
concerning *Holick*, this objection is a rehashing of the issues brought before the magistrate judge.
*Compare* Def. Mot. at 23-25 *and* Def. Reply at 8-10, *with* Objs. at 16-18. In the R & R, after the
magistrate judge recommended that Faroque's and Ikbal's claims not be subject to arbitration, she
correspondingly found no reason to grant a stay. *See* R & R at 25-26.

In light of the Court's decision to adopt the magistrate judge's recommendation that
Defendants' motion to compel arbitration be denied and the fact that no claims are proceeding to
arbitration, there is no reason to stay the action. Defendant's objection is overruled as moot.

## **CONCLUSION**

Upon due consideration and review, as discussed above, and including those portions of the R & R to which Defendants did not object, the recommendations contained in the R & R are adopted in their entirety. Accordingly, Defendants' motion to compel arbitration as to Faroque and Ikbal, dismiss the individual defendants, and stay any remaining claims pending arbitration is denied.

SO ORDERED.

Dated: Brooklyn, New York
       March 31, 2017

_____
                /s/
        DORA L. IRIZARRY
        Chief Judge

10